# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 10 C 6171 | DATE | 10/31/2011 |
| CASE TITLE | Rasmusen vs. White, et al. | | |

### DOCKET ENTRY TEXT

For the reasons stated herein, Defendant BNSF Railway Co.'s Motion for a Protective Order [33] is granted.

■[ For further details see text below.]   Notices mailed by Judicial staff.

### STATEMENT

Before the Court is Defendant BNSF Railway Co.'s ("BNSF") Motion for a Protective Order. For the reasons that follow, the motion is granted.

### I. BACKGROUND

This lawsuit arises out of a July 13, 2009, train-auto collision in LaSalle County that killed three members of the Rasmusen family and injured two others. Plaintiff Eric Rasmusen alleges that BNSF was negligent in failing to install additional warning devices at the rural grade crossing where the accident occurred. Five days before the accident, on July 8, 2009, the Illinois Commerce Commission ("ICC") entered an order directing BNSF to install stop signs at the crossing within 30 days of the order and lights and gates within one year. (the "Order"). The Order resulted from an investigation undertaken by the ICC, the Illinois Department of Transportation, the Adams Township Road District, and BNSF.

The Order was preceded by a Stipulated Agreement signed by members of those entities in January and February 2009. The agreement sets forth the plan for improving the crossing, at East 23rd Road near Somonauk, and includes two exhibits. Exhibit A provides data about the crossing, including its surface conditions, the signage at the crossing, and the amount of auto and train traffic. Exhibit B is an estimate of the costs for the project. Ultimately, it was up to the ICC whether to accept the Stipulated Agreement, *see* 625 Ill. Comp. Stat. 5/18c-7401, which it did through the issuance of the Order. *See* Stipulated Agreement, § 9, Ex. A to Def.'s Mot. for a Protective Order.

Plaintiff wants to depose BNSF employees who either signed the Stipulated Agreement or have knowledge of the process that led to it. Plaintiff contends that he plans to use this discovery to show that BNSF had notice of the hazard which existed at the crossing, not to prove that a hazardous condition was present. BNSF seeks to bar those depositions and any other evidence of either the Stipulated Agreement or the process that led to it.

| STATEMENT |
|---|

## II. ANALYSIS

Defendant's argument is based on 23 U.S.C. § 409, which provides, in relevant part:

> Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 148 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists or data.

While the legislative history is silent as to why Congress determined that such data should be inadmissible, courts have reasoned that this statute likely was meant to encourage candor in record-keeping by administrative bodies charged with determining road and railway hazards and to keep those records from becoming a "no-work tool" for private litigants. *Harrison v. Burlington N. R.R.*, 965 F.2d 155, 157 n.3 (7th Cir. 1992) (quoting *Light v. State of N.Y.*, 560 N.Y.S.2d 962, 965 (N.Y. Ct. Cl. 1990)). Since the predecessor of this statute went into effect, Congress has twice strengthened the protection it offers, first by making it expressly applicable to discovery and later by making it clear that the statute applied to raw data, not merely information included in reports. *See Pierce Cty., Wash. v. Guillen*, 537 U.S. 129, 134–136 (2003) (recounting history of statute).

It is undisputed that the project at issue here utilized federal funds. Plaintiff objects to the motion for a protective order on two grounds: (1) that the Stipulated Agreement and the Order are not in the form of "reports, surveys, schedules, lists or data" as required by the statute; and (2) information compiled or collected for the purpose of implementing a safety improvement project does not fall under the statute. As a preliminary matter, the admissibility of the Order is not at issue here, as the requested protective order would cover only the Stipulated Agreement or testimony about it.

In support of his implementation argument, Plaintiff relies on *Powers v. CSX Transp. Inc.*, 177 F. Supp. 2d 1276 (S.D. Ala. 2001), in which the court held that information compiled for the purposes of implementing — rather than planning — a highway safety project does not fall within the scope of § 409. At issue in *Powers* was the admissibility of a letter from a state official authorizing the defendant railroad to proceed with work on a project and bill the cost to the state. *Id.* at 1278. The court held that the while the statute applied to documents "identifying, evaluating, or planning the safety enhancement of potential accident sites," it did not apply to the implementation of such projects. *Id.* at 1279.

Plaintiff contends that by the time the Stipulated Agreement was reached, the planning stage of the project was over, thereby removing the agreement from the protection of § 409. The decision to update the crossing, and the manner in which this would be accomplished, had already been decided, he argues. However, as noted by Defendant, the agreement did not allow BNSF to go ahead with the changes to the crossing. That could occur only with the approval of the ICC, which came in the form of the July 8, 2009, Order. *See* 625 Ill. Comp. St. 5/18c-7401. In fact, BNSF argues, even the Order is not the "final" implementing order because the railroad still had to submit another petition and receive final approval through another resolution before the project could begin.

As such, the Court agrees with BNSF that even if the implementation/planning distinction is a valid one, the Stipulated Agreement did not implement the project here and so falls within the scope of § 409. The Seventh Circuit's ruling in *Harrison* is instructive. There, the court held that the ICC's investigative report and recommendations regarding a crossing were not discoverable under § 409. 965 F.2d at 159–60.

**STATEMENT**

Although the report in *Harrison* was issued post-accident, the statute makes no distinctions between documents created before or after the incident in question. And although a Stipulated Agreement is somewhat different from an ICC investigative report, both amount to recommendations for crossing improvements, and both are covered by § 409. *See also Rodenbeck v. Norfolk & Western Ry. Co.*, 982 F. Supp. 620, 624 (N.D. Ind. 1997) (finding that correspondence between railroad and county highway department about proposal to install stop signs at crossing was within scope of § 409); *Sawyer v. Ill. Cent. Gulf R.R. Co.*, 606 So.2d 1069, 1072–74 (Miss. 1992) (excluding letter from Mississippi Highway Department recommending that flashing lights be installed at crossing).

Next, Plaintiff argues that the Stipulated Agreement is discoverable because it is not in the form of "reports, surveys, schedules, lists, or data" within the meaning of § 409. Plaintiff again relies on *Powers*, where the court held that a letter from a state official granting the railroad authority to proceed with the work was not data compiled or collected for the purposes of planning a railway crossing improvement. 177 F. Supp. 2d at 1278. Rather, the *Powers* court held, the letter only constituted data in the sense that it contained information authorizing the project to proceed. *Id.*

Neither the parties nor the Court have found any case law dealing with the admissibility of a Stipulated Agreement submitted to the ICC. But it is clear that at the very least, the attachments to the Stipulated Agreement contain the type of data contemplated by § 409. Further, as BNSF observes, the majority of cases to consider the issue have found that correspondence between the parties to a proposed rail crossing improvement is privileged. *See Rodenbeck*, 982 F. Supp. at 621–23 (finding correspondence between railroad and county highway department about installation of stop signs was with the "expansive scope" of § 409); *Long v. State of La.*, 916 So.2d 87, 99–100 (La. 2005) (finding correspondence between mayor and state officials that led to the commencement of a crossing project to be privileged).

The Court concedes that this issue is not clear-cut; in fact, a dissenting justice in *Long* took the position that the letters were not privileged because they did not contain "any factual information used as a basis for reasoning, discussion, or calculation." *Id.* at 105 (Johnson, J., dissenting). However, the Court finds that BNSF has the better of the argument in that the Stipulated Agreement could be considered either a report of the parties for the purpose of developing a safety improvement project using federal funds or it could be considered data in the form of information provided to the ultimate decision-maker, the ICC. *See Rodenbeck*, 982 F. Supp. at 624. As such, it is excludable under § 409.

Plaintiff additionally attempts to draw a distinction by arguing that the Stipulated Agreement was not prepared pursuant to 23 U.S.C. § 130, which requires states to conduct surveys to identify railroad crossings that may require protective devices. They argue that the ICC's obligation to issue an order when it determines that a crossing is sufficiently hazardous to warrant automatic gates exists regardless of whether federal funding is available. But where this project was federally funded, the plain language of § 409 makes it applicable here. *See Mackie v. Grand Trunk W. R.R. Co.*, 544 N.W.2d 709, 712 (Mich. Ct. App. 1996) (noting that privilege statute is applicable to "documents generated with respect to projects 'which *may* be implemented using Federal-aid highway funds.'") (quoting 23 U.S.C. § 409).

Next, Plaintiff notes that Stipulated Agreement and the Order are matters of public record available on the ICC web site. While true, § 409 functions as an evidentiary bar even where, as here, the information at issue is freely available. *Vega v. State*, 804 N.Y.S.2d 229, 233 (N.Y. Ct. Cl. 2005). Similarly, Plaintiff argues that because the existence of agreements to upgrade crossings has been mentioned in court rulings, *see, e.g., Thiele v. Norfolk and W. Ry. Co.*, 873 F. Supp. 1240, 1245 (N.D. Ind. 1994), at the very least the existence of the Stipulated Agreement must be admissible. However, the cases cited by Plaintiff are not persuasive because they do not address the issue of the scope of the evidentiary privilege of § 409.

Finally, Plaintiff contends that he is not attempting to circumvent the privilege statute by asking witnesses about the evolution of the planning process that led to the Stipulated Agreement. Rather, his only intent is to show that BNSF had notice of the hazard that existed at the crossing prior to the accident. This

**STATEMENT**

notice argument, however, has been rejected by several courts. *See, e.g.*, *Robertson v. Union Pac. R.R. Co.*, 954 F.2d 1433, 1435 (8th Cir. 1992); *Sawyer*, 606 So.2d at 1073.

### III. CONCLUSION

For these reasons, the Court grants BNSF's Motion for a Protective Order [33] barring any reference to or evidence of the Stipulated Agreement or the process that led to it. The Court notes, however, that knowledge gained by witnesses independently of the material protected under § 409 is not privileged. *Robertson,* 954 F.3d at 1435.